**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER: 1:22-CR-20** |
| | ) | |
| **DEMETRIUS R. BOSTIC** | ) | **JUDGE: HOLLY A. BRADY** |
| | ) | |
| **Defendant.** | ) | |

# Defendant's Motion and Brief In Support Of Motion To Suppress

Comes Now the Defendant, Demetrius Bostic, (Hereinafter, "Demetrius" or "Bostic"), and submits his Motion and Brief in support of Defendant's Motion to Suppress. Bostic prays the Court suppress any and all contraband found during the search of 110 Riley Place, Fort Wayne, Indiana. (hereinafter "110 Riley Place" or "Riley Place"), and the search of 6619 Pine Meadows Lane, Fort Wayne Indiana. (hereinafter "6619 Pine Meadows Lane" or "Pine Meadows Lane"). In particular Bostic asks for the suppression of Items 901-915 contained in Exhibit A Bates page numbers 24314-24315. Bostic also asks for the suppression of Items 400-432 contained in Exhibit C. Bates page numbers 24607-24610. The issue presented in this motion to suppress is whether police violated the Fourth Amendment of the Constitution of the United States when they searched 110 Riley Place on April 19, 2022, and when they searched 6619 Pine Meadows Lane on April 19, 2022. Although the police had a search warrant for each residence, it is Bostic's position that both search warrants lacked probable cause as required by the Fourth Amendment. By this motion Bostic prays that the court order that the contraband found and alleged contraband found, during the searches of 110 Riley Place and 6619 Pine Meadows Lane,

on April 19, 2022, be suppressed and the Government be prohibited from entering the aforesaid contraband and alleged contraband into evidence in the trial of this matter.

## Facts

The Government searched both 110 Riley Place and 6619 Pine Meadows Lane after submitting Search Warrant Applications to the United States District Court Northern District of Indiana on April 15, 2022. (Exhibits B and D). Each Search Warrant Application was prepared by DEA Task Force Officer Darren L. Compton[1]. Each Search Warrant Application was signed by the Honorable Susan Collins on April 15, 2022. The Affidavit supporting the search for 110 Riley Place and 6619 Pine Meadows Lane is identical in both Search Warrant Applications. The probable cause for the search of 110 Riley Place is found on pages 33-34 of both warrant applications (Ex. B pp. 24300-24301 Ex. D. pp. 24593-24594) and the probable cause for the search of 6619 Pine Meadows Lane is found on pages 34-35 of each application ( Ex. B. pp. 24301-24302 Ex. D. pp. 24594-24595). For the reasons stated herein the probable cause for each residence taken separately or combined is insufficient to establish probable cause to search either of the residences and therefore violates the Fourth Amendment of the United States Constitution.

**Search of 110 Riley Place.**

The Government has alleged the following facts.

> Through surveillance, both physical and electronic, this address is Bostic's primary residence in Fort Wayne, Indiana. Throughout this long investigation Bostic has been observed at 110 Riley Place Fort Wayne, Indiana on an almost weekly basis. Early in this investigation on May 5, 2021, surveillance officers observed Bostic leave 110 Riley Place 53 minutes before making a money drop of $148,500 to a DEA Confidential Source at

[1] The nature of this motion to suppress is that it is critical of the contents of the Search Warrant Application. It is not personally critical of Agent Compton. To avoid any inference of impropriety, Agent Compton is hereinafter referred to as "The Author".

> the Planet Fitness parking lot at 1916 West Dupont Road, Fort Wayne Indiana. Since the May 5th incident members of the DEA and the Allen County Drug Task Force have observed the vehicles Bostic has been observed driving parked at the residence. In addition to the vehicles being seen at 110 Riley Place, Bostic's phone pings also indicated he is in the area of 110 Riley place on a regular basis. As recent as March 19, 2022 Bostic's phone was pinging in the area of 110 Riley Place.
>
> Through the Allen County Assessor's Office 110 Riley Place, Fort Wayne, Indiana is listed as being owned by Andrene Nicole Sinclair who is believed to be Bostic's girlfriend due to the fact that Bostic's phone is in her name and Sinclair lists 110 Riley Place as her residence in the local law enforcement database

Affidavit in Support of Search Warrant Application pp. 33-34; Exhibit B Bates Stamp pp

24300-24302.[2]

**Search of 6619 Pine Meadows Lane.**

The Government has alleged the following facts.

> Through surveillance, both physical and electronic, this location is believed to be a stash house for Bostic. On multiple occasions Bostic has been observed at 6619 Pine Meadows Lane which indicated that this is a stash location. On May 5, 2021, Bostic went to this location after he delivered $148,500.00 to a DEA Confidential Source at the Planet Fitness parking lot at 1916 West Dupont Road, Fort Wayne, Indiana and on June 7, 2021, during the traffic stop where officers seized $169,520.00 from Jerry Watson, surveillance officers observed Bostic drive back to 6619 Pine Meadows Lane, Fort Wayne. During surveillance officers have also noticed that it appears that Bostic has unrestricted access to the residence and possibly a garage door opener.
>
> The white van with Indiana registration TK458NOD that normally sits in the driveway overnight at 6619 Pine Meadows Lane and is at the Lewis Street Grill during the day is registered to Demetrius Bostic. The subject who has been observed driving the white van from 6619 Pine Meadows Lane to the Lewis Street Grill is believed to be Tyrone Freeman DOB 12/14/1963.
>
> Through your Affiants training and experience it is common for drug dealers to retrieve narcotics from their stash house and then deliver the narcotics to a subject at a location close by. Drug dealers do this to protect the location of the stash house so they do not get robbed of their money or drugs.

Affidavit in Support of Search Warrant Application pg. 34-35. Exhibit B. Bate Stamp pp.

24301-24302

---

[2] For simplicity and brevity only references to Exhibit B are included since the Affidavits are identical.

Both of these searches rise and fall on the credibility of the confidential informant involved in the alleged May 5, 2021 money drop.

## Applicable Law

The Fourth Amendment to the United States Constitution is written as follows:

Amendment IV

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

> The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity. See *Payton v. New York,* 445 U.S. 573, 584, 100 S. Ct. 1371, 63 L.Ed.2d 639 (1980).

*Kentucky v. King*, 563 U.S. 452, 459, 131 S. Ct. 1849, 1856, 179 L. Ed. 2d 865 (2011)

> The Fourth Amendment "right of the people to be secure in their persons ... against unreasonable searches and seizures" generally requires a law enforcement officer to have probable cause for conducting a search. "Probable cause exists where 'the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed," *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543 (1925)), and that evidence bearing on that offense will be found in the place to be searched.

*Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370, 129 S. Ct. 2633, 2639, 174 L. Ed. 2d 354 (2009)

## Argument

The Government begins its statement of probable cause by alleging that Bostic was being investigated for drug trafficking and money laundering in 2021. (Bates 24271.). In 2016 the FBI and the Fort Wayne Safe streets Gang Task Force began an investigation of the “Mafia Street Gang.” The Affidavit alleges that Bostic was a drug supplier of the Mafia although it does not give any evidence or specific example of this allegation. Similarly, the Affidavit alleges that Bostic engaged in large scale narcotics distribution and money laundering along the U.S. southern border. Again, no specific evidence is mentioned. (Bates 24271).

The author of the Affidavit then alleges a Source of Information provided a phone number for Bostic. The Source also stated that Bostic carried phones specifically for criminal activities but the source also noted that the phone number he/she provided was a personal number for Bostic for use as a family/personal phone.

The Author of the Probable Cause Affidavit then alleges that on March 17, 2021, in Indianapolis, Indiana, Bostic met with a DEA undercover Officer who received a backpack containing $136,000 in U.S. Currency and this same officer noted Bostic had 4 different cell phones. (Bates 24271). The Author does not say what the money was for. It could have been for any purpose. The Author does not even allege that the $136,000 was paid for any illegal purpose. Also, the Author never directly states that the $136,000 came from Bostic. Only that the Undercover Officer met with Bostic and received $136,000. The Author does not say if Bostic was the only person who met with the Officer or provide any details about who gave the money or what its purpose was. (Bates 24271). The information is not in any way connected to 110 Riley Place or 6619 Pine Meadows Lane. This information is, at best, background information with little or no evidentiary value.

The Probable Cause Affidavit was signed and submitted on April 15, 2022; more than one year after the alleged transaction took place. Furthermore the "money drop" does not even describe any criminal activity. $136,000 is not exactly "pin money". No one keeps that kind of money in their home for over a year. Accordingly, this information has zero probative value and it is perspicuously stale information. On its face it is not evidence of a crime and even if it was not stale dated, it bears no connection to either 110 Riley Place or 6619 Pine Meadows Lane.

> As far as we can tell, no court in the nation has yet held that, standing alone, the mere existence of currency, even a lot of it, is illegal. We are certainly not willing to be the first to so hold. Absent other evidence connecting the money to drugs, the existence of money or its method of storage are not enough to establish probable cause …

*United States v. $506,231 In United States Currency*, 125 F.3d 442 (1997).

The next page of the Affidavit describes a sequence of events that took place on April 6, 2021, at 6142 Dado Drive. (Bates 24272). An Unknown Black Male went to 6142 Dado Drive driving a white Buick LaCrosse. The car was registered to Annette Redfield of Fort Wayne, IN. The "UBM" dropped something off in the garage of 6142 Dado Drive. It was concealed under a black shirt. A few minutes later the UBM retrieved a black bag from a white GMC Yukon registered to Andrene Nicole Sinclair of 110 Riley Place, Fort Wayne, IN. For all that is known the person dropped off a black shirt and retrieved an empty black bag. What the Author never states is that Dado Drive is not in Fort Wayne and is probably in Noblesville,[3,] Indiana; some 85 + miles from Fort Wayne and has little or nothing to do with 110 Riley Place or 6619 Pine Meadow Lane. Both of these addresses are in Fort Wayne, Indiana, and are the subject of this Motion to Suppress. The Author presumes, without so much as a single fact to back up the presumption, that this is somehow suspicious activity.

[3] The website Zillow indicates that there is a 6142 Dado Drive in Noblesville, IN.

More than an hour later, a man named Juan Carlos Picos-Ochoa arrived on the scene and retrieved a brown duffel bag[4] from the garage and placed it in the spare tire area of the Chrysler Pacifica that he drove to the Dado Drive residence (Bates 24272). Again, there is not even the slightest hint of why this conduct is criminally related or even suspicious. Additionally, there is absolutely no connection to 110 Riley Place nor to 6619 Pine Meadows Lane.

The next two pages of the affidavit (Bates 22473-22474), involve an alleged money drop made by Picos Ochoa at or near 30 Georgia Street in Indianapolis. These pages also describe the actions of two Confidential Sources (CS-1 and CS-2). What, or who, was the source of the money drop remains unknown. All that is known is who delivered the bag and that the bag that was carried to the money drop does not match the bag taken from the garage on Dado Drive, Noblesville. So far as is known, Bostic has nothing to do with the money drop and likewise so far as is known the money drop is not connected with anything illegal. One thing is certain, the money drop in Indianapolis is not in any way connected to 6619 Pine Meadow Lane or 110 Riley Place Fort Wayne.

Moreover, specifics of the money drop, (where the first bag was retrieved, who retrieved it and where it was brought, are dependent upon the veracity of two Confidential Sources, (CS 1 and CS2), whom the author of the affidavit never claims were vetted or that they had provided reliable information in the past. For all we know they could have done it themselves and pinned the whole thing on Picos Ochoa. Finally, not only does this alleged drop take place somewhere near Noblesville, not only is CS 2 not vetted and his vehicle (where the money was allegedly left), not subject to a pre-drop and post-drop search, but the entire escapade takes place more than a year before the search warrants for 110 Riley Place and 6619 Pine Meadow Lane were issued. This information is stale and has no relevance to these addresses.

---

[4] The significance of the brown duffel bag is never explained.

It is Bostic's position that each of the money-drops has no probative value. The information pertaining to the money drops is stale.

On April 15, 2021 Bostic, driving a Black Ram Truck is observed driving in tandem with Picos-Ochoa in Indianapolis. This allegedly takes place all day. (24274). However, surveillance was terminated at 2:45 in Anderson, Indiana. Later that day DEA Agent Schneider observed the Black Ram Truck and the Gold Mercedes at 110 Riley Place and apparently the Gold Mercedes was also located at the Lewis Street Grill (a restaurant which was then owned by Bostic). (24274-24275). The Author of the Affidavit makes the conclusory remark that it is common for drug dealers to have a second vehicle follow them. (24275). If that is the case then Picos-Ochoa is the dealer and Bostic is the follower. The author's conclusory speculation has no probative value. It is just as common, if not more so, for a person who is having car troubles to ask a friend to follow him in the event of a breakdown. There are hundreds of explanations that are not crime-connected that would explain the travel routes of Bostic and Picos-Ochoa on April 15, 2021. Finally, the statement that the two drove in tandem "all day" (24274) is belied by the fact that surveillance was terminated at 2:45 p.m. and there is no statement when surveillance commenced. It may have started at 2:15 p.m. More importantly this information has nothing to do with 110 Riley Place or 6619 Pine Meadows Lane.

The next event took place on April 29, 2021. (24275). Bostic left Dado Drive, Noblesville IN. and met with Picos Ochoa-at the Hilton Garden Inn Downtown Indianapolis. Apparently Picos- Ochoa was carrying a black duffel bag. Both men entered the hotel. There was an anticipated money drop of $150,000.00. (The anticipator is never identified). Bostic left the hotel about two hours after he arrived. Bostic was carrying a small maroon bag when he left. (The affidavit is silent on whether Bostic carried the bag into the hotel or not.) About 15 minutes later Picos-Ochoa exited the hotel with a black backpack and went to CS-2's car and

handed over approximately $180,000.00 Once again, there is nothing to connect Bostic to this money other than his temporal proximity to Ochoa prior to the money drop. Simply "being there" 15 minutes before the drop is not probable cause of anything. If the information is probative of Bostic's knowledge of the putative money drop then its probative value would show or tend to show that Bostic disassociated himself with the money drop. More importantly, for purposes of this motion, there is no connection between the April 29, 2021, money drop and 110 Riley Place or 6619 Pine Meadows Lane.

Again, this alleged money drop takes place some fifty-one weeks prior to the issuance of the warrants. The author of the affidavit does not even allege that the money drop was for an illegal purpose. Once again, the Government is asking this Court to make an unprecedented holding. "No court, in the nation has yet held that, standing alone, the mere existence of currency, even a lot of it, is illegal." *$506,231 in United States Currrency, infra.* Just as importantly, as will be argued, the credibility and reliability of CS-2 is never established. Somewhere, someplace within the four corners of the Affidavit, the author has to at least allege Bostic committed a crime.

On May 5, 2021, the Author of the Probable Cause Affidavit alleges that Bostic conducted a money drop at Planet Fitness. (Bates 24276). The author does not allege that the putative money drop is connected with illegal activity. More importantly, just as noted above, the credibility the of May, 5, 2021, Confidential Informant, (identified as CS-3), is the lynchpin, which holds together the Government's probable cause to search these residences which are the subject of this motion to suppress. That lynchpin is a weak link indeed. Nowhere does the author claim that CS-3 has provided reliable information in the past. Nowhere does the Government say the CS was disinterested and had no stake in the outcome. Nowhere does the Government state the CS was credible and had no pending cases against him/her. The

Government does not even claim that the $148,500 was money that was paid for an illegal purpose. For all that is known, the $148,500 was money paid to the CI for a legitimate purchase or a legitimate debt and that was all there is to it.

No more is known about the CS or the $148,500 than is written on the face of the affidavit, namely; The White Camaro was driven from110 Riley Place to Planet Fitness. Det. Tim Moord observed a male exit the driver's seat of the white Camaro and get a bag out of the trunk of the Whtie Camaro. Bostic was the driver and Bostic gave the CS a bag of currency. The bag that was given to the CS by Bostic contained $148,500. After the money drop surveillance officers followed Bostic. Bostic drove directly to 6619 Pine Meadows Lane, Fort Wayne, Allen County, Indiana. (24276.) The author does not even say that agents did a pre-money drop search of the CS's vehicle or a post-money drop search of the CS's vehicle.

In summary there are 4 money drops. The first three, March 17, 2021, April 6, 2021 and April 29, 2021 all take place in Indianapolis. They have no connection with 110 Riley Place Fort Wayne or 6619 Pine Meadows Lane Fort Wayne. The fourth money drop takes place at Planet Fitness in Fort Wayne. That drop took place on May, 5 2021. For the reasons stated herein the money was not stored at either 110 Riley Place or 6619 Pine Meadows Lane. For purposes of this motion the putative Indianapolis drops took place at least a year before the issuance of the search warrant of the Fort Wayne properties and the alleged Planet Fitness drop took place at least eleven months before the issuance of the search warrant. The Confidential sources have never been vetted and apparently have never provided reliable information in the past. So, their credibility and reliability are totally unknown. The money itself is never tied to criminal activity.

It is Bostic's position that there was insufficient evidence to support Magistrate Judge Collins' finding of probable cause. The Affidavit, which was the only support for the Warrant

Application[5] relied on an insufficiently corroborated informant(s). When an Affidavit is the only evidence that is presented to obtain a search warrant the warrant must stand or fall solely on the contents of the affidavit. *United States v. Koerth*, 312 F.3d 862, 866(7th Cir. 2002). When the affidavit, as it does in the case at bar, relies on information supplied by an informant, the Judge must consider the reliability of the informant. (*United States v. Johnson*, 655 F.3d 594, 600.) It stands to reason that the Judge must look at and determine the degree to which the police have corroborated the information; whether and to what extent the information is based on the informant's own observations, how much detail the informant provides, the time elapsed between the reported events and the warrant application and whether the informant appeared in front of the Magistrate. *Id*. 600. All of that information is absent in Bostic's case.

Instantly the Warrant Application was presented to Judge Collins on April 15, 2022, (Bates 24262) 11 ½ months after the last Money Drop. (Bates 24276). (May 5, 2021.) Regarding the May 5, 2021 money drop; there is nothing known about the credibility of the confidential sources. It appears that the car he drove to and from the money drop was not searched prior to the money drop or after the money drop. This is also critical because the confidential source could have easily hidden the bag in his car prior to the money drop and then handed over the very same bag he hid in the car to the DEA Personnel. To make the probable cause even weaker, the DEA claims, Det. Tim Moord saw a male exit the White Camaro and take a bag from the trunk and then give a bag of currency to the CS. This "description" provides no description of the bag. It could be a paper bag, it could be a gym bag, it could be any number of bag styles and brands and colors. The Agent that submitted Ex. B to Judge Collins does not even state that the bag that was given by the CS matched the style and color of the bag taken

[5] From the discovery in this case it appears that there was no evidence, other than the affidavit presented to Judge Collins in support of the Warrant(s).

from the white Camaro. There is no description of the bag at all. Finally, there is not even the slightest allegation that the $148,500 that was part of the money drop had an intended illegal destination, illegal source, or illegal purpose. For all that is known it could have been an intended donation to Catholic Charities. The $148,500 is nowhere tied to an illegal origin or destination and has no criminal activity associated with it.

> Where, as here, the affidavit submitted in support of a search warrant relies on information supplied by an informant, the totality-of-the-circumstances inquiry generally focuses on the informant's reliability, veracity, and basis of knowledge. *See United States v. Olson,* 408 F.3d 366, 370 (7th Cir.2005). Several factors inform the analysis, including: (1) the degree of police corroboration of the informant's information; (2) the extent to which the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge to present the affidavit or testimony. *United States v. Koerth,* 312 F.3d 862, 866 (7th Cir.2002). "[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Brack,* 188 F.3d 748, 756 (7th Cir.1999) (citing *Gates,* 462 U.S. at 233, 103 S. Ct. 2317).

*United States v. Dismuke*, 593 F.3d 582, 586–87 (7th Cir. 2010)

The Author never affirmatively states if the information from CS1, CS2, and CS3, was ever corroborated. All there is to rely on is the observations of the three confidential sources. All three of whom are apparently totally unvetted. As demonstrated herein, the information provided by the confidential sources is lacking in important details. The time interval between the reported events and the application for the Warrant is so spread out it makes the information woefully stale. None of the informants appeared before magistrate Collins. The Court does not know anything about the reliability of the informants and on top of that their information is stale.

As this pertains to search warrants of 110 Riley Place and 6619 Pine Meadows Lane. The stale information along with the total lack of information about the three confidential sources; (including their credibility or past reliable information), the intended purpose/use of the money; or even the predictive value of future criminal activity (assuming arguendo the money was from an illegal source to begin with), does absolutely nothing to overcome the stale information pertaining to "money drops".

> When the affidavit is supported by information from an informant, the probable cause determination turns on the informant's credibility. *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir.2009); *United States v. Olson*, 408 F.3d 366, 370 (7th Cir.2005). To assess whether the informant's information is sufficiently reliable to support issuance of the warrant, a court considers: (1) the degree to which the informant acquired knowledge of the events through firsthand observation; (2) the amount of detail provided; (3) the extent to which the police corroborated the informant's statements; (4) the interval between the dates of the events and the application for the search warrant; and (5) whether the informant appeared before the judge in person and filed his own affidavit. *See United States v. Sutton*, 742 F.3d 770, 773 (7th Cir.2014); *Koerth*, 312 F.3d 862 at 866. No one factor is dispositive. *United States v. Brack*, 188 F.3d 748, 756 (7th Cir.1999) ("a deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability").

*United States v. Hansmeier*, No. 13-30042-2, 2014 WL 6475275, at *4 (C.D. Ill. Nov. 14, 2014), aff'd, 867 F.3d 807 (7th Cir. 2017).

In Bostic's case, none of the *Dismuke* requirements nor any of the *Hansmeier* requirements are squarely met. In addition, at the risk of belaboring what is now obvious, the money, even a large amount, standing alone, is not illegal. $*506,231 in United States Currency, infra.*

A search warrant for Bostic's residence requires more than general evidence of Bostic's activity. The Affidavit needs to allow the Judge to whom it is presented to make a determination

that there was probable cause that evidence of the trafficking and money laundering would be found at 110 Riley Place and 6619 Pine Meadows.

> The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison*, 480 U.S. 79, 84–85, 107 S. Ct. 1013, 1016–17, 94 L. Ed. 2d 72 (1987)

The only evidence that is presented is of a general nature. The validity of the warrant in this case lies entirely on the strength of the affidavit. (*United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967). There is no specificity as to why money or drugs would be found in the 110 Riley Place or 6619 Pine Meadows Drive. It seems that the warrant is based upon a general notion that Bostic associates with Watson and Picos-Ochoa and therefore he must be involved in the drug trade. None of the money drops, nor any of the allegedly suspicious activites have anything to do with either of the residences. Nor, is there is ever any indication that money is being stored at either of these locations, nor is the money even tied to anything illegal.

The Connection of 110 Riley Place and/or 6619 Pine Meadows Lane with the Money Drop becomes even more distant and remote based upon the actions of Bostic throughout the course of the alleged May 5, 2021 drop. (Bates 24276)). Bostic drove a white Camaro to Planet Fitness and was under the observation of Lt. Jeff Smallwood when he left 110 Riley Place. Lt. Smallwood does not allege that he saw Bostic carrying a bag as he entered the Camaro. This is important because Bostic must have had the money bag (if there ever was one), in his car. The activity is not connected to 110 Riley Place but to the White Camaro. After the

Money Drop Bostic is followed to 6629 Pine Meadows, Fort Wayne, IN. There is nothing suspicious about this activity. It is Bostic's residence. He is not seen taking anything suspected of being contraband in or out of the house. Finally, of all the times throughout this affidavit when Bostic allegedly employed "Countersurveillance" maneuvers/tactics while driving – the one time he does not employ any countersurveillance is when he is allegedly personally dropping off $150,000.00

More importantly, nothing, absolutely nothing, is known about CS-3. He was apparently never vetted and never provided valuable information in the past. CS-3 was not subjected to a pre-buy or a post-buy search. Also, May 5, 2021 is 11 months before the search warrant is executed. 110 Riley Place and 6619 Pine Meadows have no connection to the "drops" and the purpose of the drop is never stated.

On May 25, 2021 Bostic drove a white Jeep Compass with a Florida License Plate registered to EAN Holding LLC. (i.e. Enterprise Rental), and met at the Lewis Street Grill with a male black. (P. 24276). An oversized duffle bag was put into the rear hatch of the Jeep. Bostic was followed by surveillance officers to Silver Wolf Trail, Fort Wayne, Indiana. The Author claims this residence is a known drug dealer. (24276-24277). Bostic carried a plastic grocery bag into the residence. What the author does not write is that a plastic grocery bag is the same type of bag that Bostic used to deliver meals. The Author in no way connects the oversized duffle bag to criminal activity nor does he connect the plastic grocery bag to the oversized duffle bag or to any criminal activity. Even if this activity was somehow connected to criminal activity it is not connected to 110 Riley Place of 6619 Pine Meadows Lane. At best it only connects to Bostic's restaurant.

On June 7, 2021, surveillance officer observed Bostic on Mill Bridge Court Fort Wayne. (24277). A white Sprinter Van was seen parked in the area and Bostic was seen near the Sprinter Van talking to two men. The Sprinter Van was later stopped. A K9 did a sniff and alerted to the rear of the vehicle. Inside the vehicle a backpack containing $169,520 was located. Bostic allegedly drove by the traffic stop "multiple" times and went to 6619 Pine Meadows Lane. The driver of the Sprinter Van was Jerry Watson.

Watson told police he met his boss at Walgreens near Bishop Dwenger High School. He went on to say he was driving the vehicle to Chicago to make a delivery. Watson was to deliver the packages in the van to an address in his phone which turned out to be a parking lot at O'Hare Airport in Chicago. Upon questioning Watson allowed police to review his phone. Watson had placed "several calls" to "D-Bo" (believed to be Bostic) during the stop. (24277-24279). The Author then notes that a review of Bostic's GPS data indicates that on June 19, 2021 he was in the area of O'Hare airport where the white Sprinter Van was to have travelled on June 7, 2021. (24279). On that occasion Bostic had travelled from his residence in Noblesville (Dado Drive) to Chicago. Bostic's trip to Chicago, 12 days after Watson was supposed to go to there has no known or even suspicious connection to Watson's attempt to drive there. It is trying to make guilt from association and it is a remote association at that.

It is preposterous to claim that a journey from Noblesville to an "area" of Chicago twelve days after Watson was stopped travelling to O'Hare Airport somehow connects Bostic to the money found in the White Sprinter Van on June 7, 2021. It should also be noted that although Bostic was surveilled by several officers on June 7, 2021, he was never seen anywhere near the rear of the Sprinter Van nor was he seen putting a backpack into the van. Nor, for that matter was he even seen with a backpack. The agents involved in this investigation seem to ignore

Watson's explanation of picking up the van at Walgreens and instead choose to believe it must have come from Bostic. There is no evidence to support that interpretation. There is absolutely no connection whatsoever with this activity and 110 Riley Place or with 6619 Pine Meadows Lane. Finally, as to the calls to "DBO" during the traffic stop, the author knows full well Bostic's phone number(s). There was a tracking warrant placed on the phone. If that number was Bostic's number, the author would have stated so. To make the case even more vague, nowhere in the affidavit does the author even claim that the 2012 white Sprinter Van driven by Watson on June 7, 2021 was one and the same white Sprinter Van parked near/ in the area of Mill Bridge Court Fort Wayne, that same day.

The Author of the Affidavit goes on to write about a "suspicious" manner of travel that Bostic employed when he left Chicago and travelled north to Michigan then east to Toledo, Ohio and then to the Southeast side of Fort Wayne. (24280). The Author neglects to acknowledge that Bostic is in the restaurant business and was just as likely to be travelling to Detroit in order to obtain favorable pricing on his supplies and meats as he was to be attempting to avoid detection by surveillance. Since he is not alleged to be dealing drugs or buying drugs in any of the cities he travelled through, it would make no sense to travel a circuitous route if not for his business.

The Government truly outdoes itself when it claims that, "In August of 2021 Bostic was conducting counter-surveillance and was suspicious of the undercover police vehicles conducting surveillance on him" (24281). This is speculative, conclusionary, and based only on what the author imagines Bostic is thinking. Yet, it is typical of the Government's desperate attempt to establish probable cause.

The Government then goes on to write about seized money that belongs to the "Mexican Cartel" (as if there is only one Mexican Cartel), and drug activity at the Lewis Street Grill. (24281). All of this information is attributed to CI #783. Once again, there is a total disregard of virtually all Seventh Circuit precedent pertaining to reliance on Confidential Informants. The author of the Probable Cause Affidavit does not even attempt to establish a history of the credibility or reliability for the confidential informant. The Court should disregard this information since it has zero *indicia* of reliability as it comes from a completely unvetted, anonymous CI with no known history of credibility.

The next chain of events takes place near Detroit, Michigan on December 3, 2021. (24284). Watson, who is alleged to be an associate of Bostic is located by a phone ping. Bostic's phone is pinging and is also in the Detroit area near Watson. Later, (the time frame is never detailed), a black GMC Yukon and a dark blue Chevrolet Silverado are travelling in tandem on US 24 and I 469. The two vehicles eventually end up at the Lewis Street Grill. The Police Officers involved admittedly observe no transactions between the two vehicles. What the Author of the Affidavit fails to understand is that Bostic is the owner of a restaurant. He is a sole proprietor and of course he travels to Detroit, Chicago and Indianapolis for supplies and meats as well as other food. However, the affidavit has no real detail at all of where Bostic went while in Chicago and Detroit. For all it is worth, Bostic may have attended a Red Wings game or a Pistons game. Once again, there is no connection between this chain of events in Michigan and 110 Riley Place or 6619 Pine Meadows Lane.

The Author of the Affidavit next describes what he believes is to be illegal activity on December 13, 2021. (24285-24287), The author premises the notion that there is criminal activity taking place at 2:48 p.m. because Bostic had the audacity to turn off his phone. This is

considered to be a "countersurveillance activity". This is, of course, a totally overblown imagination on the part of the author. It is far more likely that Bostic, an overworked sole proprietor of a restaurant, was trying to get an hour of sleep in the afternoon when the lunch crowd had left. Following the afternoon lull in activity the author describes at length how three vehicles, (one driven by Bostic and one driven by Watson), travel from 4505 Atwood Drive Fort Wayne, Indiana, to a Walmart Supercenter located at 2321 Charles Street Anderson, Indiana. Following the activity at the Walmart Supercenter; Bostic and an unknown person driving a white van drove southbound toward Indianapolis while Watson drove back to his home in Fort Wayne. Along the way Bostic and the unknown male stopped at Buffalo Wild Wings in Anderson. These pages accomplish nothing. It does not advance the Government's case for probable cause one bit. If anything, it serves the purpose of showing that neither 110 Riley Place nor 6619 Pine Meadows Lane has anything to do with Bostic's daily business.

Notwithstanding the lack of any criminal activity taking place during the Walmart Supercenter caper, the author of the Affidavit falls back on "his training and experience" to point out that it is common for vehicles traveling in tandem when conducting criminal activity. (24286). The 'tandem travelling" allegation is overblown and overplayed. It could be applicable to anyone that travels in tandem including grandmothers traveling in tandem to Walmart Super Saver Sales.

The author then goes on to allege that the "BOSTIC Drug Trafficking Organization" (capitalization as in the original affidavit) used this same technique on June 7, 2021 when $169,000 in U.S. Currency was interdicted on US 30 and when Bostic and Watson returned from Detroit on October 17, 2021. As for the June 7, 2021 activity, the problem faced by the Author

is other than driving by Watson "multiple times"[6] there has been no connection shown between Bostic and the money that was "interdicted" on June 7, 2021. It is certainly not connected directly or indirectly with 110 Riley Place or 6619 Pine Meadows Lane. Once again, the information is, at the time of the Warrant Application, 10 months old. Finally, the Author never even attempted to claim that the money in Watson's vehicle was obtained illegally or was to be used for an illegal purpose.

Looking at the October 17, 2021 "suspicious" road trip; there was no criminal activity whatsoever associated with the October 17, 2021, trip from Fort Wayne to Detroit. All of these allegations are speculative, specious, and conclusory statements – nothing more. Not a single drug buy or drug sale has been attributed to Bostic within the confines of the Affidavit. The conclusory allegations by the Author continue as he alleges that Watson carrying a duffle bag into his house was somehow protecting a "load" of either money or drugs. At this point, according to the author, Watson was "protected" by a female that he lives with. (24287). The Author has engaged in total speculation based only on unfounded beliefs.

The Author then describes, at length, how Watson travelled from Detroit to Fort Wayne on January 5, 2022. (24287-24288), Somewhere along that route Watson was met by Bostic. Watson left Detroit at 8:31 a.m. and did not meet with Bostic until 4:30 p.m. So, it seems likely that they met in or near Fort Wayne since Detroit is only a three-hour drive from Fort Wayne. Watson and Bostic used Stellhorn Road to drive to the Village of Buckingham. The Author believes this is suspicious and that they should have taken Lahmeyer Road. It should be noted that Lahmeyer and Stellhorn run perpendicular to each other, connecting the same general area,

[6] "multiple times" would, of course include as few as twice. How many times Bostic actually drove by is never alleged. An allegation that seems suspicious for its lack of certainty.

and the time difference between using either route would have been at most a matter of minutes. Once again, the author speculates that the vehicles were conducting counter surveillance. The Author wrote that Bostic and Watson went to Silver Wolfe Trail. What the Author did not write is that Bostic and Watson frequently brought food to that home. The Author then describes how Watson and Bostic met in an alley behind 1007 Madison Avenue in Fort Wayne. (24288). Watson appeared to move something from the bed of the Silverado and placed it in the back seat of the Silverado. Without more this description is not in any way a notation of suspicious activity. The Author further describes how the two trucks proceeded to the Lewis Street Grill. Once there, items were unloaded from the Silverado and the Yukon and brought into the Lewis St. Grille. Again, this is hardly a description of anything except unloading a truck. Once again, there is no connection whatsoever with 110 Riley Place and or 6619 Pine Meadows Lane.

On January 12 and 13, 2022 the DEA and the ACDTF and the FWPD conducted surveillance on Bostic. (24289). Once again Bostic had the audacity to turn off his phone while he was in the "area" of Saint Joe Center Road and Maplecrest Road. The author notes this is the area of his residence, 6619 Pine Meadows Lane. It is Bostic's position that turning off his phone while he is at home is only an indication of his desire for some quiet time in his home. Shortly after this Bostic is seen leaving his home. Bostic pulled into the parking lot at Kroger Grocery Store 6002 St. Joe Road and parked for two minutes without getting out of the car. He then exited the parking lot and drove westbound on St. Joe Center Road. The Author once again alleges and speculates that this is counter-surveillance activity. The author, obviously a movie fan, claims this is generally used when someone is "dirty". It is also typical of someone sending a text message when that person does not want to text while driving on busy St. Joe Center Road.

On January 25, 2022, at 5:14 p.m. Bostic met with Watson at the Marathon Gas Station at 7201 Maplecrest Road, Fort Wayne, Indiana. (24290), Watson got into Bostic's black Dodge Ram for 2 minutes. Watson then returned to his Silverado and the two drove in tandem to the Gordon Food Service Store, Anderson, Indiana. Watson got a blue duffle bag out of his Silverado and placed a blue duffle bag into Bostic's Dodge Ram. (It is unknown if this was the same bag removed by Watson from his Silverado). Watson and Bostic's vehicles split up and Watson went back to Fort Wayne. Bostic went to a Marathon Gas Station at 1629 Rabile Ave, Anderson, Indiana. Bostic met with several subjects inside the gas station. One of the subjects walked over to Bostic's truck and removed the blue duffle bag and placed it into a 2016 Buick and drove to a residence a few blocks away in the 2500 block of 11th Street Anderson, Indiana. A few minutes later the Buick returned to the Marathon Gas Station where Bostic was still parked. The vehicle (probably the Buick), was registered to Annette Redfield of Fort Wayne. A vehicle registered to Annette Redfield was also involved in the alleged "money drop" of March 17, 2021 in Indianapolis. (24291). On January 26, 2022 Bostic was videotaped leaving 12013 Chapelwood Lane, Fisher, Hamilton County, Indiana. Bostic was carrying a blue tote bag with handles and a couple of bottles. Fort Wayne Detective Greenlee reviewed a photo of Bostic carrying the blue bag from his residence in Fishers and stated that the bag looked identical to the one that was exchanged in Anderson. This of course, calls into question when the bag was returned to Bostic since it was last seen being put into the 2016 Buick and being driven to the 2500 block of 11th Street Anderson Indiana. No matter how much anyone wants to speculate, there was no criminal activity observed over either January 25 or 26, 2022, and even if the activity in Anderson was suspicious it had nothing to do with 110 Riley Place or 6619 Pine Meadows Lane.

On January 28, 2022 Bostic went to Las Vegas Nevada. He returned to Indianapolis on February 1, 2022. While in Las Vegas Bostic rented a car and drove 724 miles. (24292). The

vehicle Bostic rented was known to have travelled by Route I-15 southbound. The Author speculates that Bostic went to Los Angelas to meet with a drug supplier in Lakewood, California. (24293). This is total guesswork and speculation. There is no evidence whatsoever to back it up. The Author does not mention the name of the putative drug supplier. Nor is it mentioned whether the supplier was in the area on the date Bostic was there. The Los Angeles Ca. population is over nine million people. The Los Angeles metropolitan area has a population over 13 million. The author is facing some very long odds to try to connect Bostic's drive toward Los Angeles from Las Vegas to any reasonable suspicion that Bostic was visiting an unnamed drug supplier. The author never mentions what the alleged time frame was when the unnamed person was supplying Bostic. Yet, this lack of specific details and lack of any credible evidence does not deter the author from making inferences of drug distribution on the part of Bostic.

On February 4, 2022, Bostic's black Ram was at 6619 Pine Meadows Lane for six minutes. A white cargo van was in the driveway and the garage door was up. The Cargo van is registered to Bostic. The van has routinely been seen at the Lewis Street Grill. (24293). These observations are to be expected. 6619 Pine Meadows is Bostic's residence. The Lewis Street Grill is his business. A restauranteur owning a van should hardly be considered out of the ordinary. No criminal activity was observed on February 4, 2022 during the surveillance of Bostic.

On February 7, 2022 Bostic was again surveilled. (24293). He was observed possibly bringing a package to a person in a red pickup truck in the Kroger Parking Lot at 6002 St. Joe Road. There is no explanation given for why this should be deemed drug related except for the conclusory statement by the Author that it is common for drug dealers to retrieve narcotics from

their stash house and deliver the narcotics to a customer nearby. [7] Once again this is nothing but blatant and conclusory speculation. Even if, this speculation is supported by the Author's professional experience, he does not cite a single factual experience to support it.

On February 24, Bostic was observed driving a black Ram Dodge Pickup Truck in Anderson. Bostic was followed to the Marathon Gas Station at 1629 Rabile Ave. A male exited a Buick carrying a black bag and entered the passenger's seat of Bostic's pickup truck for less than a minute. The male then exited without the bag and went back to the black Buick for a few seconds and returned to Bostic's truck. The male sat inside for approximately one minute. The male exited without the bag again and returned to the Buick. Bostic left the area towards I69. The black Buick left the gas station approximately 7 minutes later and drove to 2508 W. 11th Street Anderson, Indiana. A review of surveillance video reveals the male in the Buick is similar in appearance to Leander Redfield. (24294-24295). The Government, of course invites the court to speculate that this is a drug drop or a money pickup. Occam's Razor leads to the conclusion that Bostic forgot his bag the last time he was there. In either scenario no criminal activity was observed. This event references neither 110 Riley Place nor 6619 Pine Meadows Lane.

On March 1, 2022 Bostic was observed backing out of his garage at 6619 Pine Meadow. (24295). It was concluded that Bostic has access to the residence. (24295-24296).

On March 3, Bostic was observed in Hamilton County, Indiana. Bostic was in Anderson. Bostic met with the driver of a black Buick and then travelled to Indianapolis making several stops. Bostic spent the night in Fishers, Indiana. No criminal activity was observed. (24296).

---

[7] At this point, if this was a drug delivery, the absence of counter surveillance and/or driving in tandem with another vehicle seems inexplicable.

On March 4, 2022 Bostic's truck arrived at the Indianapolis Airport. Bostic's phone pinged in Las Vegas later that evening. Bostic returned to Indiana on March 7, 2022. (24296).

From March 19, 2022 to March 22, 2022 Bostic travelled to New York City and back to Indiana. He drove to Anderson and then back to Fishers, Indiana. No criminal activity was observed. (24297-24298).

On April 5, 2022 Bostic drove to the Indianapolis Airport. Bostic turned his phone off several days before driving to the airport. The Author believes Bostic does this when he is believed to be involved in illegal activity. This is, of course, pure speculation on the part of the author. No criminal activity by Bostic are observed. (24298). Bostic apparently went to Phoenix and rented a car. (24299). The GPS device on his truck indicated he returned on April 11, 2022. No criminal activity was observed. (24300).

**<u>The Search of 110 Riley Place</u>**

The Government states that this is Bostic's primary residence. The Government bases this presumption on both physical and electronic surveillance. However, the Government notes that Bostic has only been observed there on a weekly basis. (Affidavit in Support of Search Warrant Application p. 33; Exhibit B Bates Stamp pp 24300.) It seems obvious that a weekly presence at a residence hardly qualifies it as a "primary residence". To further weaken the Government's justification for the search, the only date on which any activity putatively associated with possible criminal activity is May, 5, 2021. For the reasons stated herein the May 5, 2021 activity has no meaningful association with any criminal activity nor does it even come close to the formation of a "fair probability on which reasonable and prudent [people,] not legal technicians, act." *Harris*, 568 U.S. at 244, (internal citations and punctuation omitted).

In the Probable Cause affidavit, the Government alleged that Mr. Bostic left 110 Riley Place on the morning of May 5, 2021 at 10:51 a.m. (24276). He was driving a white Camaro. No where in the affidavit was it alleged that he carried a briefcase or a bag of any sort with him from the house to the Camaro. He was observed 53 minutes later at the parking lot of Planet Fitness allegedly making a money drop of $148,500 to a DEA Confidential Source, (CS-3). (24276). 53 minutes elapsed between the time Bostic left 110 Riley Place and when he arrived at Planet Fitness, 1916 West Dupont Road. According to Google Maps the distance from 110 Riley Place to 1916 West Dupont Road is four (4) miles and it takes 10 minutes to drive that distance. It is safe to presume that Bostic did not take 5.3 times longer driving than it other-wise would have taken him while carrying a large amount of money that was associated with illegal narcotics. Logically, and assuming *arguendo* that Bostic actually delivered money on that date, Bostic stopped somewhere and picked up the money. This is especially apparent because at Planet Fitness he is seen carrying a bag. Whereas, when he left 110 Riley place the presence of a bag is not noted. What is even stranger regarding this whole transaction is that at no time does the author of the Probable Cause Affidavit allege that the "money drop" at Planet Fitness was in any way associated with narcotics or, for that matter, any other illegal activity. Notwithstanding the fact that Planet Fitness is known as the "no judgement zone", in order obtain a search warrant for 110 Riley Place the Government must at least allege that the residence is associated with a specific criminal act. The "money drop", which is the sole basis for the search warrant of 110 Riley Place, does not even purport to be an illegal act. Moreover, that residence, by the Government's admission, is owned not by Bostic but by Andrene Sinclair whom the Government alleges to be his girlfriend. Bostic purportedly stays there "regularly". However, The Government never alleges how regularly he stays there. This nebulous description is insufficient to establish probable cause. Is it once a week? once a month? every other week? The regularity

is never particularized. The only time he is specifically reported being there is May 5, 2021, and the warrant is applied for on April 15, 2022. Nearly one year later. This information is stale by the time the search takes place.

> It is true that the age of the information supporting the application for a warrant is a factor that the magistrate should consider when determining that there is probable cause to believe that evidence being sought will be found in the place to be searched. *See United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir.1987). If the information is too old, it is considered stale and probable cause no longer exists. *Sgro v. United States,* 287 U.S. 206, 210–12, 53 S.Ct. 138, 140–41, 77 L.Ed. 260 (1932). Nevertheless, the warrant can be issued if other factors indicate that the information is reliable and that the object of the search will still be on the premises. *Batchelder*, 824 F.2d at 564. Courts have found that search warrants were not stale when based on information nine months old (*Batchelder*, 824 F.2d at 564); six months old *United States v. Williams,* 603 F.2d 1168, 1172 (5th Cir.1979), *cert. denied sub nom. Scalf v. United States,* 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980)); or five months old *United States v. Grandstaff,* 813 F.2d 1353, 1357 (9th Cir.), *cert. denied,* 484 U.S. 837, 108 S.Ct. 119, 98 L.Ed.2d 78 (1987); *United States v. Reyes,* 798 F.2d at 382

*United States v. McNeese,* 901 F.2d 585, 596–97 (7th Cir. 1990)

> It is the magistrate's duty to make a " 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *United States v. Malsom*, 779 F.2d 1228, 1237 (7th Cir.1985) (quoting *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983)). The age of the information supporting the application for a warrant is a factor that a magistrate should consider. It is, however, only one factor. If other factors indicate that the information is reliable and that the object of the search will still be on the premises, then the magistrate should not hesitate to issue a warrant. *See United States v. Grandstaff*, 813 F.2d 1353, 1357 (9th Cir.1987) (search warrant based on five-month-old information not stale); *see also United States v. Reyes*, 798 F.2d 380, 382 (10th Cir.1986).

*United States v. Batchelder*, 824 F.2d 563, 564–65 (7th Cir. 1987).

Instantly, the only factor applicable to 110 Riley Place, the home of Bostic's girlfriend, is the fact that he was seen leaving that address some 53 minutes before the "money drop" which the government does not even allege was an illegal transaction. Moreover, it would seem that the money, assuming *arguendo,* that it could be tied to an illegal activity: was not kept at 110 Riley Place. Bostic took 53 minutes to arrive to a location 10 minutes away. It seems far more likely than not that he went to another location to pick up the money. Finally, to further illustrate why the search of 110 Riley Place must be suppressed nowhere does the Government allege that the recipient of the money drop, (CS 3), has provided reliable information in the past; was searched before and after the money drop; was followed by agents from Planet Fitness to a rendezvous point where CS 3 met with agents and delivered the $148,500 to them. There is no way to determine that the information supplied has met the requirement that it is reasonably trustworthy.

There is nothing in the Affidavit which establishes a "fair probability" that a "reasonable and prudent person" would expect to find evidence of a crime inside 110 Riley Place *Fla. v. Harris*, 568 U.S. at 243–44.

The Government has failed to establish that 110 Riley Place was Bostic's primary residence and failed to establish probable cause for the search of the residence.

**Search of 6619 Pine Meadows Lane**

The Government has alleged the following facts. The Government believes that the residence is a stash house for Bostic. "On multiple occasions Bostic has been observed at 6619 Pine Meadows Lane which indicated that this is a stash location." Bostic's arriving at and

leaving a residence, which the Government admits he has access to, (24296), is certainly not an indication of that property being a stash house. In fact, it would be suspicious if he had only been observed there on a few occasions. This contention that Bostic has been seen there on multiple occasions belies the Government's basis for the search of 110 Riley Place. The Government contends that Riley Place is Bostic's primary residence yet he is seen at 6619 Pine Meadows Lane more often that he is seen at Riley Place.

"On May 5, 2021, Bostic went to this location after he delivered $148,500.00 to a DEA Confidential Source at the Planet Fitness parking lot at 1916 West Dupont Road, Fort Wayne, Indiana …" First, the Government does not even allege that the putative delivery of the $148,500.00 was in anyway an illegal transaction. It is the exact same issue which the Government claims gives it probable cause to search 110 Riley Place. Second, the Government never claims the confidential source was vetted or had provided reliable information in the past. Third, one thing is for certain, Bostic was alleged to have gone to Planet Fitness after leaving his girlfriend's residence, 110 Riley Place, Fort Wayne, In. So, there is no reason to think he obtained the $148,500.00 dropped off at Planet Fitness from 6619 Pine Meadows Ln. The Government does not allege that the money drop was made in exchange for drugs or other contraband. For that matter it does not even claim that the $148, 500 was linked into an illegal transaction. Therefore, there is no reason to believe that Bostic brought anything back to 6619 Pine Meadows Ln. when he returned from the alleged money drop. Hence, there is no reason to believe that 6619 Pine Meadows Ln. was used as a stash house for purposes of this transaction.

The Government also alleges that on "… June 7, 2021 during the traffic stop where officers seized $169,520.00 from Jerry Watson, surveillance officers observed Bostic drive back to 6619 Pine Meadows Lane, Fort Wayne." There is no information whatsoever that connects Bostic to the stop of Watson on June 7, 2021 other than the fact that Watson and Bostic are friends and Bostic happened to drive by the spot where Watson was stopped. Mere presence at the scene of a crime is not enough to establish probable cause.

> Unlike the general search warrants of colonial America, the Fourth Amendment requires that probable cause be individualized—not just to the time of arrest, but specific to each defendant. *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L.Ed.2d 238 (1979). "[G]eneralized suspicion alone is not enough to justify a warrantless ... seizure of a person." *United States v. Johnson*, 170 F.3d 708, 710 (7th Cir. 1999). A "person's mere propinquity to others independently suspected for criminal activity does not, without more, give rise to probable cause." *Ybarra*, 444 U.S. at 91, 100 S.Ct. 338. In short, "it is not unlawful for someone to be in the company of another." *United States v. Heath*, 188 F.3d 916, 922 (7th Cir. 1999); *see also United States v. Williams*, 341 U.S. 58, 64 n.4, 71 S. Ct. 595, 95 L. Ed. 747 (1951) ("[t]o be present at a crime is not evidence of guilt as an aider or abettor"); *Ellis*, 499 F.3d at 690 ("mere presence at the scene of a crime is not enough to establish probable cause").

*United States v. Hartsell*, 432 F. Supp. 3d 805, 816 (N.D. Ind. 2020)

Regardless of whether Bostic had some tangential relationship to the $169,520.00 confiscated there is no reason to believe that his house at 6619 Pine Meadows Lane was involved. No agency has reported that Watson was there in the morning before the pullover and there is no indication that Bostic was there on that morning either. All that is known is that Bostic went there after Watson was stopped and apparently Bostic returned - empty handed.

The Government also adds "During surveillance officers have also noticed that it appears that Bostic has unrestricted access to the residence and possibly a garage door opener." (Search Warrant Application pg. 34. Exhibit B Bates Stamp p. 24302) Bostic does have unrestricted access to the house. He has keys to the front and back door and a garage door opener just like any other home owner. Nothing in the probable cause affidavit makes it more likely than not that 6619 Pine Meadows Lane, is a stash house. To the contrary, it seems from the alleged facts contained in the Probable Cause Affidavit, it was not his stash house – assuming there ever was a stash house.

The Government's justification for the search warrant also relies on the following:

> The white van with Indiana registration TK458NOD that normally sits in the driveway overnight at 6619 Pine Meadows Lane and is at the Lewis Street Grill during the day is registered to Demetrius Bostic. The subject who has been observed driving the white van from 6619 Pine Meadows Lane to the Lewis Street Grill is believed to be Tyrone Freeman DOB 12/14/1963.

(Search Warrant Application pg. 34. Exhibit B Bates Stamp p. 24302)

The fact that Bostic owns a van is not unusual under any circumstances. It is common place. The fact that the white van is parked outside of Bostic's place of business is predictable. Bostic needs a van for picking up food, supplies and equipment. The fact that it is parked outside his restaurant is hardly probative evidence that he is engaged in criminal activity. Similarly, the fact that he drives it home at night is by no means indicative of any criminal activity.

The Government makes the conclusory argument that:

> Through your Affiants training and experience it is common for drug dealers to retrieve narcotics from their stash house and then deliver the narcotics to a subject at a location close by. Drug dealers do this to protect the location of the stash house so they do not get robbed of their money or drugs.

( Bates 24303)

All of this may or may not be true but it relies on the premise that there is sufficient evidence to establish probable cause to believe that evidence of a crime will be found at 6619 Pine Meadows Ln. This cannot be established by conclusory arguments. The only evidence on the face of the Search Warrant Application/ Affidavit concerning 6619 Pine Meadows Ln. is that it is a residence, to which Bostic commutes to and from his restaurant. He stays there overnight. He parks the van that sits outside his restaurant there and on one occasion he drove there after his friend was stopped. On another occasion he drove there after he allegedly gave $148,500 to a totally unvetted, confidential source who was apparently never searched before or after the transaction and who was apparently not observed before or after the transaction.

> The magistrate judge's decision to issue a warrant "is to be given considerable weight" and should be overruled only when the supporting affidavit, read as a whole in a realistic and common-sense manner, fails to allege specific facts and circumstances to allow the judge to reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Koerth*, 312 F.3d 862, 866–67 (7th Cir. 2002) (internal quotations omitted).

> Probable cause exists when the supporting affidavit presents a total set of circumstances which create a "fair probability" that a search will uncover evidence of a crime. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Fifer*, 863 F.3d 759, 764 (7th Cir. 2017). We assess whether the issuing judge had a "substantial basis" for concluding that there was probable cause. *Gates*, 462 U.S. at 238, 103 S. Ct. 2317; *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010).

*United States v. Haynes*, 882 F.3d 662, 665 (7th Cir. 2018

There is nothing contained in the Probable Cause affidavit that alleges that Bostic was seen bringing into, or taking out of, either residence contraband or the monetary proceeds of contraband. In this case the supporting affidavit not only fails to establish that there is probable

cause to search either of the residences but actually vitiates the notion that that there is a fair probability a search will uncover evidence of a crime.

On the morning of May 5, 2021, Bostic left 110 Riley Place before going to Planet Fitness on Dupont Road to make the money Drop. (Pg. 9). It took him 39 minutes to travel a distance of four miles. If he did give the $148, 500 to a DEA confidential source, (one for whom no credibility has been established in the affidavit), it is clear beyond purview of doubt that he did not have this money when he left 110 Riley Place. He stopped somewhere along the way to pick it up. The fact that he went to 6619 Pine Meadows Ln. after he left Planet Fitness also establishes nothing. He certainly did not stash anything at the Pine Meadows Residence that morning.

Similarly on June 7, 2021 when Watson was stopped with $169, 520.00 there is no *indicia* whatsoever that Bostic stored the money at 6619 Pine Meadows Ln. There is no indication or even so much as a bald allegation that Bostic had an ownership interest in the $169,520.00 that was taken from Watson. Based upon the "facts" established by the Probable Cause Affidavit Bostic was nothing but a "rubber necker" driving by a police stop. No matter what his role was he certainly did not return to 6619 Pine Meadows Ln. with any contraband.

There is no allegation that Bostic ever gave this confiscated money to Watson or that somehow Watson was on a "buy" mission for Bostic. Bostic's vehicle was seen going past the scene where Watson was arrested. Again, this act, if it ever occurred, has no connection with Riely Place or Pine Meadows Lane. As Judge Lichty made clear in *Hartsell*, *Supra* mere presence (let alone a drive-by), is not enough to establish probable cause.

Common sense, required by *Illinois v. Gates, Supra,* does not support the issuance of the search warrants. The Confidential Sources (CS -1, CS-2 and CS-3) have no record of reliability or credibility and anything they have offered to the support of the probable cause affidavit must, as a matter of Seventh Circuit law, be totally disregarded. There is a total absence of any "fair probability" that the search would uncover evidence of a crime. Despite the bald conclusory assertion that the 6619 Pine Meadows was Bostic's "stash house", the probable cause affidavit fails to establish even a remote possibility that the residence was used for that purpose.

As for the white van which is seen at 6619 Pine Meadows Lane, it is uncontested that Bostic stays at this residence and is the owner of the white van. The van is at the Lewis Street Grill during the day because that is the business Bostic owns. That too is uncontested. The van has not been associated with any suspicious activity. Accordingly, the presence of the van at 6619 Pine Meadows Lane adds nothing to probable cause.

For all of the reasons stated herein, Demetrius Bostic respectfully requests that the Court grant his Motion to Suppress and prohibits the Government from producing any and all evidence taken from 110 Riley Place and 6619 Pine Meadows Lane at the trial of this matter.

Respectfully submitted,

*/s/ Thomas N. O'Malley*

Thomas N. O'Malley