EXHIBIT

A

STATE OF INDIANA )
) SS:
COUNTY OF JACKSON )

IN THE JACKSON SUPERIOR COURT I

CAUSE NO: 36D01-2103-MC- 105

IN THE MATTER OF A REQUEST FOR THE )
ISSUANCE OF A SEARCH WARRANT FOR )
TELECOMMUNICATIONS RECORDS )
AND PRECISION LOCATION INQUIRIES )

FILED
MAR 25 2021
Melissa J. Hayes
CLERK, JACKSON CIRCUIT/SUPERIOR COURT
BROWNSTOWN, INDIANA

# SEARCH WARRANT AFFIDAVIT

I, Matthew L Carver, being first duly sworn upon my oath, state as follows:

I am a Police Officer with the Seymour Police Department and a Task Force Officer with The DEA. I have been a police officer since 2011. I am a "law enforcement officer" as that term is defined in I.C. 35-31.5-2-185.

I have been assigned to the DEA since 2018. Since 2011 I have been employed by the Seymour Police Department. During my time as a law enforcement officer I have participated in several narcotics investigations and have been the lead Detective on several narcotics investigations. I have conducted surveillance of narcotics traffickers in numerous investigations and have participated in multiple narcotics investigations involving individuals trafficking in controlled substances from other states and from other countries. In connection with my official duties, I am involved in investigations relating to violations of the Indiana controlled substances laws.

I have received training relating to enforcement of the Indiana controlled substances laws, including the following:

1. My initial training at the Indiana Law Enforcement Academy in 2012. I have satisfied the minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5-2-1-9 and described in IC 35-37-4-5;
2. National Drug Interdiction Conference in Nashville Tennessee;
3. IDEA Conference in Indianapolis, Indiana;
4. DEA Task Force School, Indianapolis, Indiana;

## The Investigation

1. The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2. This Application is submitted in connection with an ongoing and organized criminal enterprise investigation being conducted by the Seymour Police Department ("SPD") and the United States Drug Enforcement Agency ("DEA") into the user of a cellular telephone used by Demetrius BOSTIC, assigned telephone number (260) 557-9243, subscribed to Tracfone at 8290 W County Road 200 S, North Vernon, Indiana and service provided by AT&T (hereinafter, Target Cell Phone).

3. Based on the investigation to date and as described in detail below, I believe that the Target Cell Phone will reveal evidence of an ongoing and organized criminal enterprise, specifically drug trafficking and money laundering. BOSTIC is a source of supply of various narcotics to include cocaine and marijuana in the state of Indiana.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that state of Indiana violations have been committed, are being committed, and will be committed by BOSTIC (the user of the Target Cell Phone), and others known and unknown. The "Requested Information" is defined as: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) received a radio signal from the Target Cell Phone. There is probable cause to believe that the Requested Information will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

5. The SPD and the DEA are currently investigating a large drug trafficking and money laundering organization being led by Indiana resident Demetrius BOSTIC. The investigation has revealed that BOSTIC has been obtaining large quantities of marijuana each month from the southwest United States for further distribution in Indiana. A cooperating defendant in federal court provided this information to the Federal Bureau of Investigations ("FBI"). This same cooperating individual told the FBI that BOSTIC and the cooperating defendant, from 2015 to 2018, drove rental cars with between $100,000.00 and $500,000.00 in U.S. currency to Lakewood California, and another co-conspirator would both thereafter drive back to Indiana with large quantities of MJ to be sold in Indiana.

6. In February 2021, an FBI source of information (SOI) provided the Target Cell Phone as a phone number for BOSTIC. Per the SOI, the Target Cell phone was more of a personal phone for BOSTIC but BOSTIC carried other phones specifically for criminal activities. From my training and experience, I know that drug traffickers oftentimes compartmentalize their phones to separate out various uses (a personal/family phone, a phone for customers only, or sources only, etc.).

7. I researched the Target Cell Phone, and I determined that the cell phone is a Tracfone and has an address listed of 8290 W County Road 200 S, North Vernon, Indiana. I researched that address on Jennings County Indiana GIS and determined that Robert and Debra Simmons own the real estate at 8290 W County Road 200 S, North Vernon, Indiana. Based on the tax bill listed on Jennings County Indiana GIS, Robert and Debra Simmons do not reside at 8290 W County Road 200 S, North Vernon, Indiana. This is unoccupied farmland. I ran BOSTIC through CLEAR, which is a computer resource I use to learn information about targets. CLEAR is an open-source database that contains information on property ownership, utility bills, credit card usage, known family members, etc. CLEAR told me that BOSTIC likely lives in Fort Wayne, Indiana. Tracfones are frequently used by individuals for criminal enterprises, because Tracfones do not require a subscription and can be purchased and used without producing identification to vendors who sell Tracfones.

8. On or about March 15, 2021, a DEA confidential source (CS), acting as a money launderer, negotiated with an unknown male to arrange a money pickup of suspected drug proceeds in the Indianapolis area. The CS and unknown male both agreed to have "their people" meet in Indianapolis on March 17, 2021. Through my training and experience, I know drug trafficking and money laundering organizations often look for individuals to assist in moving large amounts of U.S. currency to continue their criminal enterprise.

9. On March 17, 2021, a DEA Undercover Officer met with BOSTIC in Indianapolis, Indiana in a mall parking lot and received a black backpack containing approximately $136,000 in U.S. Currency. During the meet the Undercover Officer observed four cell phones in possession of BOSTIC.

10. The DEA Undercover Officer and Bostic did not know each other, had never met each other previously, and had never spoke with each other by telephone or online previously.

11. In my experience, and using common sense, someone with $136,000.00 in cash does not give that cash to an unknown person, in a backpack, in a mall parking lot, unless the transaction is criminal in nature.

12. I reviewed BOSTIC's NCIC-III criminal history printout (NCIC-III is a national database containing information about arrests and convictions on individuals). And I learned that BOSTIC was arrested January 23, 2003 in Indiana (unknown county) for Dealing in Cocaine and Possession of a Firearm by a Felon. BOSTIC was also arrested February 10, 2003 by the DEA for Distribution of Crack Cocaine. BOSTIC was also arrested October 27, 2003 by the DEA for Dealing in Cocaine. The NCIC-III also stated that BOSTIC was convicted of Distribution of Crack Cocaine on July 22, 2004. The NCIC-II also stated that BOSTIC was arrested in Illinois on August 18, 2004 for Selling, Distributing, or Dispensing a Narcotic Drug. The NCIC-III also states that BOSTIC was arrested February 5, 2009 for Dealing in Marijuana in Indiana (unknown county).

13. Based on my training and experience as a DEA task force officer, I know that high level drug dealers often use intermediaries to mask the route that the money takes and attempt to evade law enforcement, in their drug dealing operations.

14. Combined with BOSTIC's prior drug dealing arrests and conviction, the fact that he is using a "burner phone", and the fact that he delivered the $136,000.00, I believe that BOSTIC's drug dealing operation has evolved since 2015-2018. Instead of delivering the money himself, I believe that BOSTIC is now delivering the U.S. currency he uses to purchase illegal drugs to an intermediary, who will then deliver the U.S. currency to the dealer, to shield BOSTIC from the attention of law enforcement officers.

15. Based upon my training and experience, I am familiar with the methods employed by individuals involved in the trafficking of controlled substances, including the following:

A. Individuals involved in the trafficking of controlled substances often use cell telephones and other digital and electronic media to further the goals and enterprises of the trafficking enterprise by communicating with customers, other employees, and suppliers of controlled substances. These cell phones and other digital and electronic media devices generally store historical data regarding the prior use of such equipment, including voice

messages, text messages, contact information and a history of contacts to and from the cell phone or other digital or electronic media device.

B. Individuals involved in the trafficking of controlled substances are often in possession of these cell telephones on or about their person, in their residence, or vehicle to be able to communicate quickly with customers, suppliers, and runners to further the goals of the trafficking enterprise.

C. I know that drug traffickers routinely carry their cellular phones on their persons, so that they have ready access to co-conspirators and are able to direct and keep apprised of their illegal activities. I also know that drug traffickers will utilize multiple cellular phones for their distribution network and to evade law enforcement.

**REQUEST FOR COURT ORDER**

Based upon the facts and circumstances set forth above, I hereby request that the Court issue an Order, pursuant to 18 U.S.C. Sections 2703 (d), 3122, 3123, and 3124, and pursuant to I.C. 35-33-5-12, based upon probable cause, directing **AT&T**, and any other telecommunication providers, to provide to law enforcement, specifically agents of the Seymour Police Department and the Drug Enforcement Administration, telecommunications records and assistance for the following cellular/wireless telephone number: (260) 557-9243.

The Information I ask that AT&T be ordered to provide is: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers), received a radio signal from Cell Phone number (260) 557-9243.

I request that the Court issue a warrant and Order authorizing agents of the Seymour Police Department and the Drug Enforcement Administration to obtain the Requested Information for a period of forty-five days.

IT IS FURTHER REQUESTED that the Court direct the Service Provider to assist agents of the SPD and DEA by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct the Service Provider for the Target Cell Phone, to initiate a signal to determine the location of the Target Cell Phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times

as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user of the Target Cell Phone for a period of forty-five days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the DEA.

IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

IT IS FURTHER REQUESTED that the Affidavit and Application, Court's Order, and Warrant be sealed for one year in order to avoid premature disclosure of the ongoing investigation, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and service provider(s) as necessary to effectuate the Court's Order. This investigation is likely to last at least one year.

I swear or affirm under penalties for perjury that the foregoing representations are true.

Matthew L. Carver
Affiant